The decision below is signed as a decision of

the court.

Signed: May 21, 2007.



```
                    _____
                         S. Martin Teel, Jr.
                    United States Bankruptcy Judge
```

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JOYCE ANN PARKER, | ) | Case No. 05-01021 |
| | ) | (Chapter 13) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| JOYCE ANN PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 06-10038 |
| WELLS FARGO HOME MORTGAGE, | ) | |
| INC., | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendant. | ) | |

MEMORANDUM DECISION RE MOTION
TO DISMISS FIRST AMENDED COMPLAINT

On April 27, 2006, the plaintiff Parker commenced this adversary proceeding against Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), which held a claim secured by a mortgage (in the form of a deed of trust) against her home. Among other claims, Parker sought a determination that Wells Fargo was owed less than it was claiming to be owed because it had in the past imposed improper mortgage charges against her. On November 28, 2006,

Parker sold her home.  Parker filed an amended complaint ("Complaint" or "Compl.") on January 18, 2007, alleging that when she sold her home she paid off the amount that Wells Fargo claimed to be owed, and renewing her allegation that Wells Fargo had claimed more than it was actually owed.[1]  Wells Fargo has filed a motion to dismiss the Complaint on the basis of Federal Rule of Civil Procedure 12(b)(6) and in the alternative seeking summary judgment.

In seeking summary judgment, Wells Fargo has only appended papers relating to a civil action Parker filed in the Superior Court for the District of Columbia on September 22, 2003, in which Parker made allegations that are not inconsistent with the allegations of the Complaint.  Accordingly, its request for summary judgment adds nothing: the motion will turn on whether the Complaint states a claim upon which relief can be granted.

I

In invoking Rule 12(b)(6), Wells Fargo's motion raises principally the defense of the statute of limitations.  When

---

[1] Because the sale occurred after the filing of the Complaint, the Complaint arguably is a supplemental complaint in that regard under Fed. R. Bankr. P. 7015(d) even though the payment upon the sale was an outgrowth of what the original complaint addressed (Wells Fargo's assertion of excessive amounts owed it).  Wells Fargo has not sought dismissal on the basis that the Complaint is a supplemental complaint that may be filed only upon permission of the court.  To the extent the Complaint is a supplemental complaint, permission is hereby given retroactive to the date of the filing of the Complaint for the assertion of the supplemental complaint.

deciding a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim upon which relief may be granted, the court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts concerning the sufficiency of the claim in favor of the pleader.  See Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985).  Likewise, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitled him [or her] to relief."  Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The court may only grant a 12(b)(6) motion on statute of limitations grounds if the applicability of the defense is conclusive on the face of the Complaint.  See id. at 1115 (citing Richards v. Mileski, 662 F.2d 65, 73 (D.C. Cir. 1981)); Jones v. Rogers Mem'l Hosp., 442 F.2d 773, 775 (D.C. Cir. 1971).

II

THE BREACH OF CONTRACT CLAIM

In the Complaint's first count (entitled "Breach of Contract - Misappropriation of Mortgage Payments" and mislabeled Count V), the plaintiff seeks a recovery of the amount overpaid to Wells Fargo from the proceeds of the sale.

A.

The overpayment claim arose as of the date of the alleged overpayment in November 2006, **after** Parker filed her Complaint, and thus it is not barred by any possible statute of limitations.

This is true even though the excessive charges Wells Fargo allegedly made to Parker's account were, in many cases, imposed many years ago.  She was not obligated to sue Wells Fargo when Wells Fargo made an excessive charge.  Instead, she was free to defend against Wells Fargo's claims by asserting that she owed less than Wells Fargo claimed to be owed.  There is no statute of limitations on defending against a claim.  It was not until Parker paid Wells Fargo more than was necessary to satisfy the claim that she was cast in the posture of having to sue within a statute of limitations for a recovery of the excess amounts paid to Wells Fargo.

Specifically, Wells Fargo claims that many of its errors occurred more than three years ago (and thus beyond what it claims is the applicable statute of limitations).  However, it was Wells Fargo's refusal, within that three-year period, to correct its errors that resulted in Parker having to pay more than was owed.  Accordingly, the breach of contract claim to recover excessive amounts paid is timely.

4

B.

As part of the first count, Parker claims that she is entitled to actual and treble damages, plus attorney's fees and expenses, pursuant to the D.C. Consumer Protection and Procedures Act, D.C. Code § 28-3901(2000), <u>et seq</u>. ("DCCPPA"). She repeats this claim in the Complaint's final count which is devoted to all of her DCCPPA claims. Part V of this decision addresses those DCCPPA claims, including the DCCPPA claims relating to the first count of the Complaint.

III

THE PLAINTIFF'S CLAIMS UNDER THE
REAL ESTATE SETTLEMENT PROCEDURES ACT

Parker alleges in the second count of the Complaint (mislabeled Count VI) that Wells Fargo violated the requirements of 12 U.S.C. § 2605, part of the codified provisions of the Real Estate Settlement Procedures Act ("RESPA"), by failing to:

 (a) promptly post payments received in a timely manner;

 (b) timely apply payments to principal and interest on her account;

 (c) make timely payments of escrow funds for casualty insurance premiums and property taxes; and

 (d) timely and adequately acknowledge, investigate and respond to her qualified written request for information about the servicing of her loans and escrow accounts.

Compl. ¶ 50. No provision in § 2605 imposes the requirements set

forth in paragraphs 50(a) and (b) of the Complaint, and, accordingly, I will treat them as meaningless for RESPA purposes.

However, paragraphs 50(c) and (d) of the Complaint state, albeit in conclusory terms, violations of, respectively, §§ 2605(g)[2] and 2605(e).[3]  Despite the conclusory nature of the allegations, Wells Fargo seeks dismissal only on the basis of the statute of limitations.  The face of the Complaint, however, does not establish when the violations occurred, and, accordingly, Wells Fargo has not established a statute of limitations

---

[2] Section 2605(g) governs the administration of escrow accounts by servicers of federally related mortgage loans. Paragraph 50(c) of the Complaint alleges that Wells Fargo failed to "[m]ake timely payments of escrow funds for casualty insurance premiums and property taxes. . . ."  Nowhere does the Complaint identify an insurance premium or a property tax that Wells Fargo failed timely to pay.

[3] Section 2605(e) addresses the duty of loan servicers to respond to borrower inquiries relating to the servicing of loans. The duty only arises when the servicer receives a "qualified written request" (a term defined at some length in § 2605(e)(1)(B)).  Paragraph 50(d) of the Complaint asserts that Wells Fargo violated RESPA in numerous instances by failing to "[t]imely and adequately acknowledge, investigate and respond to consumers' qualified written request for information about the servicing of their [meaning, presumably, the plaintiff's] loans and escrow accounts."  Nowhere does the Complaint identify any such qualified written request.

6

defense.[4]

IV

THE PLAINTIFF'S CLAIM FOR WRONGFUL FORECLOSURE

In the Complaint's third count (entitled "Breach of Contract - Wrongful Foreclosure" and mislabeled Count VII), Parker repeats the allegations of the first count, which is also for breach of contract, but elaborates on those allegations.

A.

Parker has clarified in her response to the motion to dismiss that she does not seek damages for a wrongful foreclosure

---

[4] The limitations periods applicable to RESPA claims are set forth in 12 U.S.C. § 2614, which provides in relevant part that:

> Any action pursuant to the provisions of section 2605 . . . of this title may be brought . . . within 3 years . . . **from the date of the occurrence of the violation** . . . .

[Emphasis added.]  The statute of limitations runs from the date of the violation.  See Mullinax v. Radian Guar., Inc., 199 F. Supp.2d 311, 324 (M.D.N.C. 2002) (limitations period for RESPA claims begins to run "from the date of the occurrence of the violation" rather than from when the action accrues, and must be measured with reference to this discrete event).
   The allegations of the Complaint span several years, beginning with the District of Columbia's erroneous issuance of a tax bill on the plaintiff's home in August of 2002 and ending with the payment of allegedly excessive amounts claimed by Wells Fargo in November of 2006.  Conceivably the alleged RESPA violations occurred outside of the three-year period preceding the commencement of this proceeding.  However, if so, the court will then have to decide whether a trustee's more liberal statute of limitations under 11 U.S.C. § 108(a) may be invoked by Parker as a chapter 13 debtor in exercising a trustee's power to sue under 11 U.S.C. § 363 pursuant to 11 U.S.C. § 1303.

7

(no foreclosure having taken place), but she does not appear to have consented to dismissal of the count insofar as it seeks relief relating to the breach of contract.  Because the count seeks the same relief as the first count (a refund of the excessive amounts paid Wells Fargo upon the sale of the home), the count is timely with respect to that claim for the same reasons the first count is timely.

B.

Like the first count, the third count additionally seeks relief under the DCCPPA.  The timeliness of the DCCPPA claims is addressed in part V, below.

C.

Before turning in part V to the DCCPPA claims, it is necessary to note that in consenting to dismissal of any claim for wrongful foreclosure, Parker seeks to recast her claim as being additionally one for negligence or unjust enrichment for the wrongful institution of foreclosure proceedings, stating that she will amend her Complaint to include such claims.  The request to amend the Complaint is denied without prejudice to filing a motion to amend the Complaint.[5]  I question whether Parker has

---

[5] If Parker seeks to amend her Complaint, to assert either an unjust enrichment claim or (beyond what may already have been pled) a negligence claim, she needs to do so by motion.  It would be best if she includes a proposed amended complaint as part of the motion so that the specific claims she seeks to pursue are clearly articulated.

8

demonstrated that she can file a proper claim for "unjust enrichment" or "negligence" or needs to do so.[6]

V

THE PLAINTIFF'S CLAIM UNDER THE DISTRICT OF
COLUMBIA CONSUMER PROTECTION AND PROCEDURES ACT

In the Complaint's fourth and final count (mislabeled Count VIII), Parker asserts DCCPPA claims, and renews the allegations of the earlier counts, which, as pertinent to the DCCPPA claims, may be summarized as follows.  In 2002, Wells Fargo received an erroneous tax bill from the District of Columbia that it knew or should have known ought not be paid but nevertheless paid the bill in error in September 2002.  As a consequence it erroneously increased payments Parker was required to make under the mortgage.  On March 12, 2003, it asked the District for a refund of the erroneous tax payment.  On April 3, 2003, it sent Parker a

---

[6] Parker does not cite case law explaining why she has a claim for "unjust enrichment" or needs to pursue that claim in addition to the array of other claims already asserted. Regarding "negligence," the Complaint already includes allegations establishing that Wells Fargo wrongfully overstated the amounts owed by Parker, thus breaching the parties' contract. There is an issue whether the same allegations establish a claim for negligence (specifically, whether a party which fails to comply with a contract can ever be sued for negligence instead of only breach of the contract).  I need not decide that issue as it appears to be purely academic: a negligence claim would appear to overlap the breach of contract claim (as Parker has not articulated any reason why recovery under a negligence claim would be greater than for a breach of contract claim or why Wells Fargo's defenses would be treated any differently depending on whether Parker's claims are for breach of contract or negligence).

notice that she was in default in the amount of $6,373.56 (which she alleges in the Complaint ¶¶ 52 and 53, part of the third count, was a wrongful misrepresentation, because Wells Fargo knew or should have known that the amount involved the erroneous tax payment to the District).  On June 18, 2003, Wells Fargo sent a letter to Parker pursuing collection from Parker of all amounts it viewed as outstanding, which included the amount erroneously paid to the District.  On July 2, 2003, Wells Fargo received a refund of the erroneous tax payment.  On August 25, 2003, it instituted foreclosure proceedings in which it overstated the amount necessary to cure the mortgage arrears by including the erroneous tax payment to the District as part of the amount that had to be cured.  When Parker sought to enjoin the foreclosure sale, Wells Fargo sought to collect attorney's fees incurred in the injunction litigation.  Wells Fargo later wrongfully asserted that $29,599.10 was in arrears as part of the pay-off Parker was forced to pay when she sold her home in November 2006.

Based on these facts, Parker asserts various claims under the DCCPPA, alleging that Wells Fargo:

- violated DCCPPA § 28-3904(e) when it misrepresented to Parker that she was responsible for attorney's fees (corporate advances) that it incurred while trying to collect upon a debt erroneously created, through no fault of Parker, by Wells Fargo's failure to

> acknowledge an escrow account error (Compl. second ¶ 60);[7]
> 
> - violated DCCPPA § 28-3904(f) when it failed to inform plaintiff that it had known of, and actually received reimbursement for, the erroneous DC tax payment in the amount of $4,651.93 (Compl. ¶ 61);
> 
> - violated DCCPPA § 28-3904(f) when it continued to collect from Parker, the erroneous DC tax payment in the amount of $4,651.93 that it knew or should have known had been reimbursed to it by the District of Columbia on July 2, 2003 (Compl. ¶ 62); and
> 
> - unreasonably failed to forbear from foreclosure, as required by HUD regulations, thus engaging in an unfair trade practice in violation of DCCPPA for which Wells Fargo is liable for damages incurred by the plaintiff, i.e., the attorney's fees and costs for which it has been held liable. (Compl. ¶ 63.)

Wells Fargo contends that Parker's DCCPPA claims are subject to and time-barred by a one-year statute of limitations contained in D.C. Code § 12-301(5) (2001). That provision, however, applies only to an action "for a statutory penalty or forfeiture." The damages Parker seeks under DCCPPA are compensatory in nature, and

---

[7] There are two sets of paragraphs 59 and 60 in the Complaint, one set in the wrongful foreclosure count, and another set in the later DCCPPA count.

11

thus her DCCPPA claims are not for a statutory penalty or forfeiture, and are not subject to § 12-301(5).[8]  DCCPPA does not have its own statute of limitations, and in the District of Columbia, claims "for which a limitation is not otherwise specially prescribed" are subject to a three-year limitations period.  See D.C. Code § 12-301(8)(2001).  Accordingly, the plaintiff was required to bring any claims arising under the DCCPPA within three years "from the time the right to maintain the action accrue[d]."  See id.; Johnson v. Long Beach Mortgage Loan Trust, 451 F. Supp.2d 16, 48 (D.D.C. 2006) (DCCPPA claim subject to D.C.'s three-year residual statute of limitation); District Cablevision Ltd. P'ship v. Bassin, 828 A.2d 714 (D.C. 2003)(same).

To the extent that Parker's DCCPPA claims relate to Wells Fargo having required an excessive payoff amount when she sold

---

[8] The DCCPPA creates a "private right to recover for a private wrong . . . ." and is thus not an action for a statutory penalty or forfeiture. Shenk v. Cohen, 51 A.2d 298, 301 (D.C. App. 1947) (discussing the meaning of the word "penalty" and holding that the plaintiff's private right of action to recover double damages under the Rent Act was remedial in nature rather than an action for a statutory penalty or forfeiture subject to the one-year limitations period of an earlier version of § 12-301(5)); Pavarini & Wyne, Inc. v. Title Guar. & Sur. Co., 36 App. D.C. 348 *2 (1911) ("[N]either the liability imposed for the benefit of private persons, nor the remedy given for its enforcement by civil action, is a statutory penalty in the proper legal sense."); BLACK'S LAW DICTIONARY 1154 (7th ed. 1999)(defining a statutory penalty as "[a] penalty imposed for a statutory violation; esp., a penalty imposing automatic liability on a wrongdoer for violation of a statute's terms without reference to any actual damages suffered.").

12

her home in 2006, those claims are plainly timely under the applicable three-year statute of limitations. To the extent that the DCCPPA claims relate to damages arising at an earlier date, however, it is necessary to address the specific dates on which those claims accrued. Parker alleges that the defendant initiated foreclosure proceedings on or about August 25, 2003, a date falling within the three-year limitations period because Parker commenced the adversary proceeding in April 2006. Compl. ¶ 31. Likewise, it is reasonably inferred that the allegations relating to the defendant's continued pursuit of those foreclosure proceedings fall within the applicable limitations period, notwithstanding the plaintiff's failure to assign dates to those allegations. Accordingly, the court concludes that the plaintiff's DCCPPA claims relating to the 2003 foreclosure efforts and subsequent events are not time-barred and the defendant's 12(b)(6) motion must be denied as to those claims.

   The Complaint alleges that the foreclosure action was based on Wells Fargo having made erroneous charges to the account because Wells Fargo made a payment in September 2002 of an erroneous tax bill issued by the District of Columbia, and as a consequence over-billed Parker for amounts owed on the mortgage account. Although some of the over-billing occurred more than three years prior to the commencement of this adversary proceeding, Wells Fargo continued (within the pertinent three-

13

year period) to take actions based on those errors. Specifically, it was Wells Fargo's decision to continue to act based on those errors and to proceed with foreclosure efforts in August 2003 (less than three years before Parker commenced this proceeding) that appears to have resulted in the harm to Parker: had Wells Fargo rectified its errors and not proceeded with foreclosure, it appears that Parker would not have been harmed.[9] Accordingly, the court will deny Wells Fargo's motion with respect to the DCCPPA claims.[10]

### VI

An order follows.

[Signed and dated above.]

Copies to:  All counsel of record.

---

[9] Unlike the limitations periods provided for under RESPA and the FDCPA, which begin to run as of the date the actionable violation occurred, the limitations period applicable to a DCCPPA claim only begins to run when the right to maintain the action accrues.  Thus, even if some of the allegations giving rise to the plaintiff's DCCPPA claim were to fall outside of the limitations period, the question of precisely when the plaintiff's DCCPPA claim accrued is a question of fact not properly resolved on a motion to dismiss.

[10] Even if some of Parker's DCCPPA claims arose more than three years before she commenced her adversary proceeding, it would be necessary to address the applicability of 11 U.S.C. § 108(a)'s two-year tolling provision to these proceedings before determining whether those claims are time-barred.